882 So.2d 731 (2004)
STATE of Louisiana, Appellee
v.
Jocelyn DOOLEY, Appellant.
Nos. 38,763-KA, 38,764-KA.
Court of Appeal of Louisiana, Second Circuit.
September 22, 2004.
*734 John Cucci, Jr., Shreveport, for Appellant.
Schuyler Marvin, District Attorney, Melissa Sugar, John Michael Lawrence, Assistant District Attorneys, for Appellee.
Before PEATROSS, MOORE and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the Twenty Sixth Judicial District Court, Parish of Bossier, State of Louisiana. The defendant, Jocelyn B. Dooley ("Jocelyn"), was tried and convicted by a unanimous jury of second degree murder pursuant to La. R.S. 14:30.1 and sentenced to life imprisonment. Defendant was also convicted of obstruction of justice pursuant to La. R.S. 14:130.1 and subsequently sentenced to serve 40 years at hard labor, to run consecutive to the life sentence. Defendant now appeals both convictions and sentences. For the following reasons we affirm.

FACTS
The defendant was married to Vol Dooley, III ("Dooley"), the son of the former Bossier Parish Sheriff, Vol Dooley, Jr. During their marriage, the couple's home was located near Plain Dealing, Louisiana. Dooley worked at a Shreveport casino and Jocelyn worked at another local casino. The couple had a history of separation and reconciliation, and, although Dooley filed for divorce in 2000, the couple had never divorced. At some point in time, Jocelyn began dating a co-worker, Jeffrey Kosden ("Kosden"). Shortly thereafter, Kosden began working at a bar in Shreveport named The Blind Tiger.
On June 4, 2001, Jocelyn and Kosden obtained a marriage license from the Caddo Parish Clerk of Court. At the trial of the matter, Kosden testified that he believed that Jocelyn had previously gotten a divorce from Dooley. Jocelyn testified at trial that she wanted to reconcile with Dooley and did not want to marry Kosden, but got the marriage license with him to placate him and her parents.
On the evening of June 5, 2001, Dooley got off work at approximately 10:30 p.m. and went to The Blind Tiger bar with his friend, Brody Breaux ("Breaux"). Jocelyn was already at The Blind Tiger with her friend, Nanette Vaughn ("Vaughn"). It was Kosden's testimony that he was working at the Blind Tiger that night, and he recalled serving Dooley and Breaux a pitcher of beer.
At trial, Breaux testified, over the defendant's objection, that Dooley expressed a *735 desire to sit where he could avoid contact with Jocelyn. Witnesses testified that Jocelyn did go to Dooley's table and talked with him. After a short period of time at the bar, Dooley and Breaux left The Blind Tiger and went across the street to another bar named Mojo's. Breaux testified that the reason they went to Mojo's was to get away from the defendant so they sat upstairs to avoid being seen by her.
The testimony at trial indicated that Jocelyn and Vaughn left The Blind Tiger to look for Dooley. Vaughn testified that as they were leaving, Kosden gave Jocelyn something wrapped in a paper towel. Jocelyn told Vaughn that it was poison to give to Dooley to cause him to have a heart attack. Kosden testified that no such exchange took place.
Breaux testified that when the defendant and Vaughn went into Mojo's Bar, Dooley refused to talk to Jocelyn. It was Breaux's testimony that Dooley used the excuse of needing to use the restroom to slip out the back door to go home. This was the last time Dooley was seen alive publicly. Vaughn testified that she and the defendant stayed at Mojo's Bar for a little while longer, and then she went home to go to sleep.
According to Vaughn, she was awakened at about 2:30 a.m. by a phone call from Jocelyn, who told her to come quickly because she was in trouble and needed Vaughn's help. Vaughn dressed and quickly drove toward Plain Dealing without asking Jocelyn what had happened. While driving through Benton, Vaughn saw flashing car lights, signaling her to stop. Vaughn testified that it was Jocelyn signaling her to stop and that when stopped Jocelyn told her that she had shot and killed Dooley after they argued. As Jocelyn was telling her this, Kosden drove up in his pickup truck.
Kosden testified that at about 2:30 a.m., he was still working at The Blind Tiger when he received a telephone call from Jocelyn telling him that she had killed Dooley, and she needed his help. Kosden immediately left work and went to his apartment to pick up a roll of plastic sheeting, rope and shovels. He then drove to Benton, where he met Jocelyn and Vaughn.
Vaughn testified that while discussing their options, she suggested that they call 911, which idea she stated was declined by Jocelyn who was worried that she would lose her children, claiming a fear of the political power of Dooley's family. According to Vaughn, Kosden then suggested they get rid of Dooley's body. Vaughn stated that she then parked her car at a nearby parking lot, and the three of them used both Kosden's truck and the defendant's truck to drive to the Dooley residence.
Both Kosden and Vaughn testified that when they arrived at the Dooley home, they found Dooley's body on the bedroom floor. Although there were some differences in their testimony as to where the body was located in the home, they both testified that Dooley was found on his side and clearly was dead, with a single gunshot wound to his chest. Both Vaughn and Kosden related that Jocelyn told them she had shot Dooley as he was walking back from the bathroom.
Vaughn and Kosden described how the three of them wrapped Dooley's body in plastic sheeting and tied it up with a yellow "ski rope" brought by Kosden. They explained that Jocelyn then cleaned up the bedroom and collected all of Dooley's clothing. They testified that the plastic-enclosed body was then covered in a rug taken from the bedroom floor. Kosden and Vaughn testified that Kosden took the revolver used to shoot Dooley and a box of *736 cartridges when they left the Dooley residence. They testified that the three of them loaded Dooley's covered body into Dooley's truck, which was driven by the defendant. The testimony was that the two trucks left the Dooley residence in search of a spot to bury the body.
Kosden and Vaughn both described how the group found a spot off of a logging road in rural, north Caddo Parish, how Kosden dug a shallow hole, and how the three of them pulled the body into the make shift grave. Kosden stated that he took special care to tightly pack the dirt around the body so there would not be any sinking or settling of the dirt following a rain. Vaughn and Jocelyn then collected leaves, pine straw, and plants to put over the grave to conceal it, taking until nearly dawn for the three of them to finish burying Dooley's body.
Kosden and Vaughn both testified that afterwards, they followed the defendant to Martin Luther King Drive to leave Dooley's truck in hopes that it would give the impression that Dooley had gone into a bad neighborhood after leaving Mojo's Bar. They both described that as the three drove toward Shreveport, Vaughn and Jocelyn threw articles of Dooley's clothing out of the window. Vaughn testified that as they were crossing a bridge, she threw out one of Dooley's tennis shoes. The shoe did not go over the bridge into the water, but bounced off one of the supports and landed on the bridge. Vaughn and Kosden testified that after leaving Dooley's truck, they then drove to Kosden's apartment where Kosden burned any of Dooley's remaining clothing. After that, they cleaned up and rested. Vaughn stated that Kosden told her and Jocelyn that they had to take the secret of what had occurred to their graves. Kosden then called the defendant's parents and told them that he and Jocelyn had overslept and that he would come get the Dooley children and bring them to school. He left around 9:00 a.m. to pick up the children. He further testified that he threw the revolver used in the murder and ammunition into the Red River.
On June 7, 2001, Dooley's family reported to the Bossier Parish Sheriff's Office that he was missing, and the case was originally investigated as a missing persons case. The sheriff's office began questioning family members and friends as to the whereabouts of Dooley. The investigation revealed that no one had seen Dooley after the evening of June 6, 2001. Dooley's pickup truck was found in Shreveport. It had been broken into and some articles were missing from the interior of the truck.
On June 9, 2001, Detective Tom Myrick ("Det. Myrick") with the Bossier Parish Sheriff's Department went to Jocelyn's residence to interview her. Jocelyn told Det. Myrick that she had not seen Dooley since he left Mojo's Bar in the early morning of June 6, 2001. The testimony at trial also revealed that defendant told Det. Myrick that she had tried to call Dooley on his cell phone, but was unable to reach him. It was reported that Jocelyn stated that she then drove to Dooley's house in Plain Dealing, but did not find him there. She then reported to Det. Myrick that after that she drove to Vaughn's house where they watched movies the remainder of the night.
As part of the investigation, the cell phone records for Dooley and the defendant were obtained. They included information as to what cell phone tower was used when Dooley's and Jocelyn's cell phones were used on the night Dooley disappeared. Det. Myrick testified that this cell phone tower information did not coincide with the statements made by Jocelyn as to where she was when these calls *737 were made and received on her cell phone on the night in question.
On June 14, 2001, Michael Effinger ("Effinger") contacted the Bossier Parish Sheriff's Department identifying himself as a friend of Vaughn's. Effinger told the officers that Vaughn had telephoned him, relating how Jocelyn had killed Dooley, and how she had helped Jocelyn dispose of his body. Effinger stated that Vaughn asked him to go to the bridge to recover Dooley's tennis shoe, because she was concerned that it did not make it into the water when she disposed of it.
Vaughn was interviewed on June 14, 2001, by Det. Myrick. She told him that she had gone to The Blind Tiger and to Mojo's Bar with Jocelyn. She further told him that afterwards she had gone home. Vaughn described to Det. Myrick that a few hours later she received a phone call from Jocelyn who told her she was in trouble and needed her assistance. Vaughn related that she met Jocelyn and Kosden in Benton, and went with them to Dooley's home where they found him dead. Her statement further explained how she helped Jocelyn and Kosden dispose of Dooley's body by wrapping it in plastic, tying it with yellow rope, and then burying it in a shallow grave in north Caddo Parish. Vaughn then took the officers to the place where Dooley's body was buried. Det. Myrick testified that when Vaughn showed them the site, there was nothing above ground indicating that the ground had been moved as the dirt did not appear to be disturbed and it was covered with leaves and growing plants. According to the officers, but for Vaughn's assistance, the detectives would not have been able to find where the body had been buried. They found Dooley's body in the condition described by Vaughn, wrapped in plastic and bound with yellow rope.
Jocelyn and Kosden were arrested for the murder of Dooley, and neither gave any statements admitting to the crime. Searches of the Dooley home did not reveal any evidence of Dooley being shot at the residence.
Prior to indictments being issued against Jocelyn and Kosden, a preliminary examination was held on the motions of both Jocelyn and Kosden. The state presented testimony of Det. Myrick who detailed Vaughn's statement implicating Jocelyn and Kosden and the finding of Dooley's body. At the conclusion of the preliminary examination, the trial court denied Jocelyn's motion to reduce bail/bond finding that, "Mrs. Dooley is at least guilty of some form of homicide." Following this ruling, the defendant filed several motions for recusal, alleging that the statement by the trial judge demonstrated his inability to conduct a fair trial. The trial judge denied the motions without conducting a recusal hearing or referring the motions to another trial judge. Jocelyn sought a writ application, which was denied by this court.
Jocelyn was charged by indictment with one count of second degree murder and one count of obstruction of justice.[1] The state charged Kosden by indictment with being a principal to second degree murder. Various pre-trial motions filed by Jocelyn and Kosden were heard by the trial court. This included a motion to change venue filed by Kosden, alleging he was entitled to a change of venue because the victim was the son and namesake of the former Bossier Parish Sheriff, Vol Dooley, Jr. The motion *738 further pointed out that a portrait of the former sheriff was on display in the Bossier Parish Courthouse. As such, Kosden argued, it would be impossible to select a jury that did not know the former sheriff or have opinions about him. Kodsen's motion to change venue was not originally in the record lodged with this appeal. At the hearing on Kosden's motion, no evidence was adduced.
The trial court reviewed Jocelyn's motion for change of venue and deferred ruling on her motion until there was an attempt to select a jury. The trial court further held that if they were not able to select a jury, then a change of venue would be granted. The trial court then ordered that the picture of the victim's father, the former Bossier Parish Sheriff, be removed from display in the courthouse during the trial.
Prior to trial, Vaughn was granted "use immunity" for her testimony. Kosden ultimately accepted a plea agreement. He pled guilty to the charge of obstruction of justice and agreed to testify at trial against Jocelyn.
When the case finally came to trial, many of the prospective jurors questioned were aware of it, and many either knew or knew of the victim's father and former sheriff. Some had read about the case in the newspapers or watched coverage of it on television. Others had even heard an in-jail phone interview of Jocelyn by a local television station, for which she used her own attorney's cell phone to conduct the interview.
Of the jurors eventually selected, most stated that they had heard of the case. However, after questioning by the state, the defense, and the trial court, all jurors selected asserted that they had no preconceived ideas as to the case. Jocelyn's objections as to each of these jurors were denied by the trial court. Nevertheless, the jury pool was not depleted in the selection of the jury. Jocelyn did not use all of her peremptory challenges.
Jocelyn did not produce any evidence in connection with her motion to change venue. Following the jury selection, the trial court denied the pending motion to change venue.
At the trial of the matter, Alairis Payne ("Payne") testified that in June 2001, she was an inmate at the Bossier Parish jail with Jocelyn. Payne testified that Jocelyn admitted to shooting Dooley, and that she and her friends had disposed of the body using plastic sheeting and yellow rope. Payne gave this information to her attorney and provided a statement to the police. At the time Payne first gave this statement to the police about Jocelyn's jailhouse admission, it was not public knowledge that Dooley's body had been wrapped in plastic sheeting and tied with a yellow rope.
Jocelyn testified at trial and gave an entirely different story from either Vaughn or Kosden. She testified that she and Dooley were not separated at the time of his death, but had reconciled, and that she was living at the family residence. Jocelyn also claimed that there were no problems with the marriage, and that she and Dooley had a good relationship. She further asserted that they had not fought on the night Dooley disappeared, and that he had never harmed or threatened her. Although Jocelyn admitted dating Kosden, she stated at the trial that she was not interested in a serious relationship with him. She admitted going with Kosden to obtain a marriage license on June 5, 2001, but asserted that she only did it to placate Kosden and her family while she worked on preserving her marriage to Dooley.
Jocelyn denied shooting Dooley or having any knowledge or involvement in the *739 removal and concealment of his body. She testified to going with Vaughn to The Blind Tiger and Mojo's Bar after work on the evening of June 5, 2001, where she saw Dooley. She stated that was the last time she saw Dooley alive. Jocelyn further testified that she had no explanation as to why Vaughn and Kosden would both state she admitted to shooting Dooley, or that they had helped her dispose of his body.
At the conclusion of the trial, the jury returned a unanimous verdict of guilty as charged of second degree murder and obstruction of justice. The trial court ordered a pre-sentence investigation. Jocelyn filed a motion for appeal, which was denied by the trial court as premature, because she had not been sentenced. Jocelyn also filed a motion for a new trial, asserting insufficiency of the evidence, and trial defects. By a supplemental motion for a new trial, she asserted the verdict was defective in that the jury held a secret ballot.
Both motions for a new trial were heard on the same day as sentencing and were denied by the trial court. Jocelyn waived her delays in sentencing and was then sentenced by the trial court to life imprisonment, without the benefit of probation, parole or suspension of sentence on the second degree murder conviction. She was also sentenced to serve 40 years at hard labor, to run consecutive to the life sentence on the obstruction of justice conviction. Jocelyn's motion to reconsider the sentence was denied by the trial court and this appeal ensued.

DISCUSSION

Sufficiency of the Evidence
On appeal, defendant raises five assignments of error. First, we will address defendant's assignment of error regarding the sufficiency of evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Jocelyn contends that the trial court erred because it failed to grant her motion for a judgment of acquittal based on sufficiency of evidence.[2] Jocelyn argues that there was no evidence that she committed the crimes of which she was convicted or that the state's evidence, testimony from two admitted participants who were granted immunity, did not exclude all reasonable possibilities of innocence. Defendant was convicted pursuant to the following two statutes.
Louisiana R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:

*740 (1) When the offender has a specific intent to kill or to inflict great bodily harm.
Louisiana R.S. 14:130.1 provides, in pertinent part:
A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
(1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or
Substance either:
(a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
(b) At the location of storage, transfer, or place or review of any such evidence.
La. C. Cr. P. art. 851(1) provides that the court shall grant a motion for new trial whenever the verdict is contrary to the law and the evidence, i.e., that the evidence was insufficient to sustain the conviction. A motion for new trial presents only the issue of the weight of the evidence. Under this article the trial judge has wide discretion to determine the weight of the evidence. The refusal to grant such a motion is not subject to appellate review, except for error of law. State v. Mitchell, 26,070 (La.App.2d Cir.06/22/94), 639 So.2d 391, writ denied, 94-1981 (La.12/16/94), 648 So.2d 387, citing Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Robinson, 624 So.2d 1260 (La.App. 2d Cir.1993), writ denied, 93-2899 (La.02/11/94), 634 So.2d 372; State v. Thomas, 609 So.2d 1078 (La.App. 2d Cir.1992), writ denied, 617 So.2d 905 (La.1993); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Defendant's arguments before the trial court, and now this court, center around the question of sufficiency of evidence, and would be properly raised in the trial court by a motion for post-verdict judgment of acquittal under La. C. Cr. P. art. 821; State v. Korman, supra.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude *741 beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.09/25/98), 719 So.2d 610, writ denied, 98-2723 (La.02/05/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02), 827 So.2d 508. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.03/28/03), 840 So.2d 566, 2002-2997 (La.06/27/03), 847 So.2d 1255.
In the present case, the evidence, viewed in a light most favorable to the state, was sufficient to convict the defendant of second degree murder. The state adduced evidence that the victim had been shot in the chest with a . 38 caliber bullet. Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1 A. The discharge of a fireman at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368, cert. denied, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997); State v. Brooks, 36,855 (La.App.2d Cir.03/05/03), 839 So.2d 1075, writ denied, XXXX-XXXX (La.11/07/03), 857 So.2d 517.
The state produced two eyewitnesses, Jocelyn's boyfriend, and her best friend, who both saw Dooley in his home with a bullet hole in his chest. These witnesses also testified that Jocelyn told them she had shot the victim, and the two helped her dispose of the body by wrapping it in plastic and burying it in the woods. The three then hid or destroyed all other physical evidence of the crime. Nothing in these two witnesses' testimony was contradicted by the physical evidence. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. White, 28,095 (La.App.2d Cir.05/08/96), 674 So.2d 1018, writs denied, 96-1459 (La.11/15/96), 682 So.2d 760, 98-0282 (La.06/26/98), 719 So.2d 1048.
Jocelyn testified at trial that she did not shoot her husband, and that she had no knowledge of his murder or the concealment of his body. In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.04/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.02/21/97), 688 So.2d 520. Here, Jocelyn failed to provide any explanation for any of the state's evidence that contradicted her testimony. It is clear that the state met its burden of negating any reasonable probability of misidentification.
Similarly, the state also has the affirmative duty of proving beyond a reasonable doubt that the killing was not in *742 self-defense. State v. Arnold, 30,282 (La.App.2d Cir.01/21/98), 706 So.2d 578. Self-defense is justification for a killing only if the person committing the homicide reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that deadly force is necessary to save his life. La. R.S. 14:20(1); State v. Cotton, 25,940 (La.App.2d Cir.03/30/94), 634 So.2d 937; State v. Jones, 600 So.2d 875 (La.App. 1st Cir.1992), writ denied, 92-2351 (La.05/12/95), 654 So.2d 346. The state clearly met that burden of proof through the testimony of Kosden and Vaughn that they saw no evidence of any struggle, and that Jocelyn told them that Dooley was shot as he came from the bathroom. In addition, Jocelyn testified that she and her husband had not fought or quarreled that night, and that he had not threatened to harm her. The defendant's own testimony also negated any possible claims that the killing was in self-defense.
On appeal, Jocelyn argues that the evidence is insufficient because the two witnesses, Kosden and Vaughn, were granted immunity for their testimony, rendering such not credible. This is an issue of the determination of the credibility of the witnesses and the weight to be assigned to their respective testimony, i.e., a matter of the weight of the evidence and not the sufficiency. The defendant has not provided this court with any legal basis to review the jury's credibility determination as to the testimony of the witnesses or the defendant.
After viewing the totality of the evidence presented in a light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that the evidence presented by the state was sufficient to find the defendant guilty of second degree murder, and obstruction of justice, thus Jocelyn's arguments to the contrary are without merit.

Venue
In her next assignment of error, Jocelyn alleges that the trial court erred by failing to grant her motion for change of venue and failing to hold a contradictory hearing on that issue. Specifically, the defendant argues that the pretrial publicity made it impossible for her to receive a fair jury, and that the trial court was in error to deny her objections to the selection of the jury.
The state argues that the care and ease in selecting the jury shows the defendant failed in her burden of proving that pretrial publicity and community prejudice threatened the defendant's right to a fair trial.
Louisiana C. Cr. P. art. 621 provides:
A motion for a change of venue may be filed by either the state or the defendant. It shall be filed in accordance with Article 521; or thereafter, in the discretion of the court, any time before the first witness is sworn at the trial of the merits. The motion shall be in writing, sworn to by mover or his counsel, and shall contain:
(1) Allegations of fact upon which the motion is based; and
(2) A statement that the motion is not made for the purpose of delay, but to obtain a fair and impartial trial.
A contradictory hearing shall be held upon the motion.
Louisiana C. Cr. P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.

*743 In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
Although the defendant filed a motion to change venue and the trial court deferred ruling on the motion until there was an attempt to select a jury, it was the trial court who brought up the motion to change venue after the jury was selected, not Jocelyn. The record is irrefutable that during voir dire Jocelyn failed to put on evidence of the possible influence of the publicity. The record does not show, and the defendant readily acknowledges in brief on appeal, that there is no evidence in the record as to the pre trial publicity.
A defendant is guaranteed an impartial jury and a fair trial. La. Const. art. I, § 16. To accomplish this end, the law provides for a change of venue when a defendant establishes that he will be unable to obtain an impartial jury or a fair trial at the place of original venue. La. C. Cr. P. art. 622; State v. Clark, XXXX-XXXX (La.06/27/03), 851 So.2d 1055, cert. denied, ___ U.S. ___, 124 S.Ct. 1433, 158 L.Ed.2d 98 (2004). In reviewing whether or not a trial court erred in a motion to change venue, several relevant factors have been enumerated, those being:
(1) the nature of pre trial publicity and the particular degree to which it has circulated in the community;
(2) the connection of government officials with the release of the publicity;
(3) the length of time between the dissemination of the publicity and the trial;
(4) the severity and notoriety of the offense;
(5) the area from which the jury is to be drawn;
(6) other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant; and
(7) any factors likely to affect the candor and veracity of the prospective jurors on the voir dire.
See, State v. Clark, supra; State v. Bell, 315 So.2d 307 (La.1975).
Louisiana C. Cr. P. art. 622 places the burden of proof on the defendant to show that there exists such prejudice in the collective mind of the community that a fair trial is impossible. State v. Vaccaro, 411 So.2d 415 (La.1982). The defendant cannot meet this burden by merely showing that there is widespread public knowledge of the facts surrounding the crime or the defendant. Instead, "the defendant must show the extent of prejudice in the minds of the community as a result of such knowledge or exposure to the case before trial." State v. Clark, supra, at 1057, citing State v. Frank, 99-0553 (La.01/17/01), 803 So.2d 1. Thus, a defendant is not entitled to a jury entirely ignorant of his case and cannot prevail on a motion to change venue merely by showing a general level of public awareness about the crime. State v. Thompson, 516 So.2d 349, 352 (La.1987), cert. denied, 488 U.S. 871, 109 S.Ct. 180, 102 L.Ed.2d 149 (1988).
In the instant case, Jocelyn argues that the voir dire transcript shows many of the prospective jurors were aware of the facts of the crime, and nearly half expressed to some extent that they already had an opinion regarding the offense. But, the mere existence of any preconceived notion as to the guilt or innocence of the defendant, without more, is insufficient to rebut the presumption of the juror's impartiality. It is sufficient that the trial court can establish that such a juror can lay aside his impression or opinion and render a verdict based on the *744 evidence presented in court. Murphy v. Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); State v. Clark, supra. In brief, Jocelyn makes a general argument that many of the prospective jurors were aware of the facts of the case, and had opinions about the case. But, significantly, she fails to point to a single prospective juror who was not able to lay aside his or her prejudice or opinion to render a verdict based on the evidence.
It is difficult to even apply the seven State v. Bell, supra, factors to this case because of the complete lack of evidence introduced to the trial court as to the nature of pretrial publicity and the particular degree to which it had circulated in the community, the connection of government officials with the release of the publicity, the length of time between the dissemination of the publicity and the trial, or other events occurring in the community which either affect or reflect the attitude of the community or individual jurors toward the defendant. Obviously, the instant case was a notorious case, commanding much pre trial publicity. Nevertheless, the only evidence in the record as to this publicity is the comments by the trial court and the defendant's trial counsel acknowledgment that this case had generated a fair amount of publicity. Most notable is the fact that there is nothing in the record for this court to review to determine the nature or particular degree of this publicity.[3] Jocelyn's argument, that she was prejudiced by this pre trial publicity, is further weakened by her trial counsel's acknowledgment to the trial court that the defendant generated some of this publicity herself by granting phone interviews from her jail cell, using her attorney's cell phone.
The record is clear that a full and complete voir dire was conducted as to all prospective jurors by both the prosecution and defense. There does not appear to have been any qualification placed upon the questioning by the trial court judge. Full opportunity was given to explore each juror's possible knowledge of the case and any preconceived opinions which they may have had.
The trial court judge had previously announced that he would rule on the motion to change venue at the conclusion of jury selection. The motion was denied, to which the defense objected. A further review of this record does not show that the defense urged a contradictory hearing on the motion to change venue. Additionally, it must be viewed as trial strategy on the defense's part, as all of the allowed peremptory challenges were not exhausted. The record further reflects that back-strikes were allowed but still not exercised by the defense. This court finds no merit to this assignment of error.

Trial Judge Recusal
Jocelyn's next assignment of error is that the trial court judge failed to recuse himself from the case and failed to set a hearing on that issue before an ad hoc judge.
Louisiana C. Cr. P. art. 671(A) provides:
A. In a criminal case a judge of any court, trial or appellate, shall be recused when he:
(1) Is biased, prejudiced, or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial....
Shortly after arrest, and before the grand jury issued indictments, the defendant *745 sought a preliminary hearing. At the conclusion of the hearing, the defendant asked that she be released because of the lack of probable cause. The trial court denied defendant's motion, finding that the evidence presented established that "Mrs. Dooley is at least guilty of some form of homicide." Shortly after this ruling, the defendant filed several motions for recusal, alleging this statement by the trial court demonstrated its inability to conduct a fair trial. The trial court denied the motions without conducting a recusal hearing or referring the motions to another trial judge.
On appeal, Jocelyn argues that the trial court was biased because it found her to be "guilty" of some form of homicide.[4] La. C. Cr. P. art. 671 A(1) provides that in a criminal case "a judge shall be recused when he is biased, prejudiced or personally interested in the cause to such an extent that he would be unable to conduct a fair and impartial trial."
A trial judge is presumed to be impartial. The burden is on the defendant to prove otherwise. The grounds for recusal based on bias "must be of a substantial nature." State v. Branch, 30,733 (La.App.2d Cir.07/06/98), 714 So.2d 1277, 1285-6, writ denied, 98-2359 (La.01/08/99), 734 So.2d 1227. A mere expression of a judge's belief in the defendant's guilt is not a ground for recusation. State v. Woods, 124 La. 738, 50 So. 671 (1909).
In the present case, the trial court made the statement at issue in the defendant's preliminary examination. The basic purpose of a preliminary examination is to determine whether there is probable cause to charge a defendant with a crime and hold him or her over for trial. La. C. Cr. P. art. 296. Our earlier finding is still applicable; i.e., the trial court's statement that the defendant was guilty of some form of homicide was merely another way of stating that there was probable cause to charge her with some form of homicide. Jocelyn has failed to show how the trial court's statement represented impermissible bias. Likewise, she has failed to show how the trial court erred in denying the motion to recuse without a hearing. Moreover, the defendant incorrectly argues that the trial court must refer her motion to recuse to another judge before denying it. The jurisprudence has consistently held that if a trial court judge finds the ground for recusation not to be valid he may deny the motion without referring it to another judge. State v. Rollins, supra. This assignment is found to be without merit.

Continuance
In her third assignment of error, Jocelyn argues that the District Court judge erred when he failed to grant a short continuance of the trial to allow for a defense witness to become available after surgery. However, the record does not show that defendant filed a written motion requesting a recess, nor does the record reflect that the defendant objected to the trial court's ruling, denying the defendant's request.
Louisiana C. Cr. P. art. 708 provides:

*746 A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
Louisiana C. Cr. P. art. 709 provides:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Specifically, Jocelyn argues that the trial court erred when it refused to grant her a "continuance" during the trial because of the unavailability of a witness, Mrs. Brody Breaux, the wife of one of the state's witnesses. Pursuant to La. C. Cr. P. art. 708, Jocelyn was required to request a recess since trial had already commenced. Although her motion may have been improperly styled as one for "continuance," it can be reviewed as if it had been properly named as one for recess. State v. Smith, 25,841 (La.App.2d Cir.02/23/94), 632 So.2d 887. The standard of review of a motion for recess is the same as the review of a motion for a continuance. State v. White, 389 So.2d 1300 (La.1980). The granting or denial of a motion for continuance or a motion for recess is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. La. C. Cr. P. art. 712; State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190; State v. Gipson, 28,113 (La.App.2d Cir.06/26/96), 677 So.2d 544.
On appeal, Jocelyn alleges that the motion was an oral motion made in an unrecorded bench conference when the defendant learned that the witness would not be available. La. C. Cr. P. art. 707 provides that a motion for continuance shall be in writing. However, under extenuating circumstances, an oral motion is sufficient. State v. Bullard, 29,662 (La.App.2d Cir.09/24/97), 700 So.2d 1051.
Despite the fact that there is no written motion, or a record of Jocelyn's contemporaneous objection to the trial court's denial of an oral motion to recess the trial, a review of the transcript of the hearing on the Jocelyn's motion for new trial does not show that the trial court had considered and denied her motion for a "continuance" because of a missing witness.
Jocelyn has not specifically provided allegations as to how the trial court abused its discretion or how she was specifically prejudiced. There is a dispute as to what grounds Jocelyn used in requesting a recess from the trial court. On appeal, the defendant stated that the witness was needed to show "the sorid [sic] lifestyle of the victim and the fact that he was an illegal drug user and dealer." During argument in her motion for new trial, the defendant stated the witness "would have shown that there was [sic] possibly other people that could have shot and killed the deceased." At no point in the trial or this appeal has the defendant provided any specifics as to how the missing witness would have proven those allegations, or how the testimony would have resulted in a different outcome of the trial. Thus, we find this assignment to be without merit.

*747 Hearsay Statements

In Jocelyn's last assignment of error, she contends the District Court judge erred where it failed to exclude prejudicial hearsay statements allegedly made by Dooley. The defendant argues that the testimony of statements by the victim that he wanted to leave the bar to avoid the defendant was impermissible hearsay, and prejudicial.
Louisiana C.E. art. 803(3) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(3) Then existing mental, emotional, or physical condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), offered to prove the declarant's then existing condition or his future action. A statement of memory or belief, however, is not admissible to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's testament.
At trial, the state questioned the victim's friend, Breaux, about why Dooley left Mojo's Bar. When Breaux attempted to testify that Dooley stated he wanted to leave and go home to avoid Jocelyn, defense counsel objected to these statements being inadmissible hearsay. The trial judge denied the objection, finding the statements to be admissible to show Dooley's state of mind, pursuant to La. C.E. art. 803(3).
The extrajudicial statements of a murder victim's fear or revulsion of the defendant is an admissible exception to the hearsay rule to show the state of mind of the victim and may be used as circumstantial evidence of the victim's behavior and subsequent conduct or course of action. State v. Brown, 562 So.2d 868 (La.1990). In the instant case, the state offered statements of the victim's dislike or revulsion of the defendant. Declarations of revulsion can be distinguished from declarations of fear because declarations of fear by a victim "consistently reflect upon defendant's past or future aggressive actions, defendant's culpability, or the dispositive issue of the case." State v. Brown, supra at 879. On the other hand statements of revulsion, such as "I don't like the defendant," "may circumstantially evince declarant's expected reaction to defendant or show the probable nature of their future conduct, without necessarily a[d]verting to defendant's aggressive or culpable acts." State v. Brown, supra at 879. As further stated by the Louisiana Supreme Court in State v. Brown, supra, at 879:
The risk of unfair prejudice to defendant by confusing the jury with inflammatory or dispositive allegations, therefore, decreases. Consequently, in homicide case, extrajudicial declarations of revulsion have been found relevant, admissible evidence as immediately antecedent circumstances explanatory of the killing and tending to connect the accused with it. (Citations omitted)
In the present case, the only statements of the victim elicited at trial were that the victim did not want to be around the defendant and that he left the bar to go home to avoid her. We find no merit to this assignment of error.
For the foregoing reasons, we affirm both the convictions and sentences of Jocelyn Dooley.
AFFIRMED.
NOTES
[1] Ultimately, both charges against Jocelyn were tried together. The defendant notes in her appellate brief that the state never formally consolidated the two cases for trial; however defendant does not raise the issue in an assignment of error so this will not be addressed by this court.
[2] It should be noted that defendant's original post-conviction motion was untitled, but referred to before the trial court as one for a new trial. La. C. Cr. P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App. 2d Cir.1992), writ denied, 604 So.2d 973 (La.1992).
[3] Defendant's motion to supplement the record on appeal with a newspaper article which was not introduced at trial was denied by this court. See State v. Clark, XXXX-XXXX (La.06/27/03), 851 So.2d 1055; State v. Langley, XXXX-XXXX (La.04/03/02), 813 So.2d 356.
[4] The defendant sought a writ application on the same issue which was denied by this court for the following reasons:

There is no showing that the court erred in denying the motion to recuse without conducting a hearing. State v. Rollins, 32,686 (La.App.2d Cir.12/22/99), 749 So.2d 890. The Court's pronouncement at the preliminary examination hearing that the accused was guilty of some form of homicide is merely another form of saying there is probable cause to charge her with some form of homicide.