976 So.2d 321 (2008)
STATE of Louisiana, Appellee
v.
Melvin Charles FORD, Appellant.
Nos. 42,928-KA, 42,929-KA, 42,930-KA.
Court of Appeal of Louisiana, Second Circuit.
February 13, 2008.
*322 Mark O. Foster, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Damon D. Kervin, Assistant District Attorney, for Appellee.
Before WILLIAMS, CARAWAY and PEATROSS, JJ.
WILLIAMS, J.
The defendant, Melvin C. Ford, was charged by bill of information with the aggravated battery of Russell Ford, a violation of LSA-R.S. 14:34. He was also charged with the aggravated second degree battery of Bridgette Grimes, Carl Grimes and Kelly Ford, violations of LSA-R.S. *323 14:34.7.[1] Following a bench trial, the defendant was convicted of the lesser included offense of second degree battery of Kelly Ford and was acquitted of the other charges. The defendant was sentenced to serve five years at hard labor, with all but six months of the sentence suspended. For the following reasons, we affirm the defendant's conviction and sentence.
FACTS
Shortly after midnight on July 4, 2004, the defendant was driving an automobile south on Ford Street in Shreveport, Louisiana. A group of motorcycle club riders were riding motorcycles also south on Ford Street. The defendant and the motorcycle riders stopped at a red light at the intersection of Ford Street and Allen Street; some riders were immediately in front of the defendant's vehicle and some were immediately behind his vehicle. Some contact occurred between the defendant's vehicle and one of the motorcycles while they were stopped at the red light. As a result, a melee ensued, during which several motorcycles were destroyed and some serious personal injuries were sustained.
For purposes of analyzing the issues presented, we will separate the events that occurred before the defendant exited his vehicle from those that occurred after he exited the vehicle.[2] While there are serious factual disputes with regard to the incident, for purposes of this opinion, we will direct our focus on the events that occurred after the defendant exited his vehicle and struck Kelly Ford ("Kelly").
Our review of the testimony of the motorcycle riders and the passengers in the defendant's vehicle (his wife, sister and niece) reveals that the altercation happened one of two ways. The motorcycle riders testified that they were on their way downtown when they came to a place where Ford Street narrowed from four lanes to two lanes (apparently with a middle turn lane). At that point, they encountered the defendant's vehicle, which ended up getting in the middle of the group of at least six motorcycles when only some of the riders were able to get ahead of the defendant before the road narrowed. One of those motorcycles apparently cut in close to the defendant's vehicle when trying to get around the defendant. When they all came to the stoplight at the intersection, the defendant's vehicle rolled forward and bumped the back of a motorcycle, ridden by Kenneth Johnson ("Johnson"). A shouting match ensued, and at some point the defendant's passengers exited the vehicle and ran to a nearby house. The defendant sharply turned the wheels of his vehicle, stepped on the accelerator and began turning "donuts" in the street, knocking down and running over motorcycles and striking riders. The riders testified that the defendant knocked his own wife down in the process. Carl Grimes ("Carl") suffered a broken femur and testified that the blow from the defendant's vehicle "ripped all the meat off of my knee."[3] The defendant's vehicle eventually left the roadway, running over Bridgette Grimes ("Bridgette"), who was pinned underneath the defendant's vehicle. She suffered 17 broken *324 ribs, a broken wrist and shoulder, punctured lungs, a lacerated liver, and burns on her chest and arms.
Conversely, the defendant's passengers testified that the incident was triggered when the motorcycles immediately ahead of them at the intersection backed up into their vehicle. They testified that their vehicle became trapped because there also were motorcycles behind it. When the motorcycle riders got off their motorcycles and began striking the defendant's vehicle with their helmets, the defendant's passengers exited the vehicle and ran to a nearby house. The defendant drove around in circles trying to get away, but the riders continued to follow him and strike his vehicle. Then, a pickup truck, which was driven by a member of the motorcycle party, struck the rear of the defendant's vehicle, pushing it off the street and causing it to run over Bridgette.
Ruthie Ford ("Ruthie"), the defendant's wife, testified that she was not struck by her husband's vehicle. Instead, she stated that she tripped on the long gown she was wearing when she attempted to move out of the way of the vehicle. Ruthie testified that after she fell, "a lady" helped her to get up and asked her if she was okay.
The "lady" who assisted Ruthie was apparently Kelly, who had been riding on the back of the motorcycle of Russell Ford ("Russell"), her husband. Russell testified that he saw the defendant's vehicle strike Johnson's motorcycle, knocking Johnson to the ground. He stated that Johnson "got up yelling and screaming." Russell testified that he "jumped off" his motorcycle and approached the defendant's vehicle, when he was struck by the defendant's vehicle as it turned "donuts."
There also was testimony from patrons of a bar across the street who witnessed the incident. Their testimony was consistent with that of the defendant's passengers with regard to the events leading up to the defendant exiting his vehicle.
As demonstrated by the preceding factual background, the facts of how the altercation started were hotly contested. However, as indicated above, the events that took place after the defendant exited his vehicle are most important with regard to the conviction in this case.
It is undisputed that Kelly was struck in the face with a motorcycle helmet and that she received multiple facial fractures. Although Kelly was unable to identify her attacker, several motorcycle riders testified that the defendant struck her.
Russell testified that he saw Kelly help the defendant's wife off the ground. He also stated that he watched as the defendant got out of his vehicle and picked up his (Russell's) motorcycle helmet while "yelling and swearing" at Johnson. Russell stated that he saw the defendant approach Kelly and strike her with the helmet.
Christopher Moffitt, another motorcycle rider, and Cliffton Peppers, the driver of the truck that was following the bikers, both testified that the defendant struck Kelly with the helmet. Moffitt testified that Kelly was attending to the defendant's wife when the defendant approached her from behind and hit her with the helmet. Peppers testified that Kelly was "just standing there" prior to being hit and had not confronted or yelled at the defendant.
None of the passengers in the defendant's vehicle testified with regard to whether he did or did not hit Kelly. During an interview with police officers, the defendant stated that he was swinging a helmet to defend himself. He indicated that he did not remember hitting Kelly. At one point, the detective asked, "Why did you hit that girl in the head with the *325 helmet?" The defendant responded, "What girl?"
It was undisputed that some fighting between the defendant and some of the motorcycle riders took place after the defendant exited his car. However, no one testified that Kelly participated in the brawl in any way.
At the conclusion of the trial, the trial court found insufficient evidence to establish that the defendant intentionally ran over Russell, Bridgette and Carl. However, with regard to Kelly, the court found the defendant guilty of second degree battery, concluding that the evidence was sufficient to establish that the defendant struck her in the face with a helmet. The defendant was sentenced to serve five years at hard labor, with all but six months of the sentence suspended. This appeal followed.

DISCUSSION
Sufficiency of the Evidence
The defendant contends the evidence was insufficient to support his conviction of the second degree battery of Kelly. The defendant argues that it is possible that Kelly was hit accidentally when he swung the helmet in self-defense, and that it is also possible that one of the riders accidentally hit her. Alternatively, the defendant asserts that if the evidence, viewed in the light most favorable to the prosecution, proves he hit Kelly, the evidence does not exclude the possibility that he acted in self-defense and/or defense of others. The defendant argues that, after being surrounded by and attacked by "a large gang," and hit, and seeing a member of that gang "bending over his wife lying on the ground," he subjectively believed that his wife was "in the same mortal danger that he was."
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La. 10/17/97), 701 So.2d 1333.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra; State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App. 2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in LSA-C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 *326 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Marshall, XXXX-XXXX (La.11/29/06), 943 So.2d 362; State v. Burd, 40,480 (La. App. 2d Cir.1/27/06), 921 So.2d 219, writ denied, XXXX-XXXX (La.11/9/06), 941 So.2d 35; State v. Jones, 31,613 (La.App. 2d Cir.4/1/99), 733 So.2d 127, writ denied, 99-1185 (La.10/1/99), 748 So.2d 434; State v. White, 28,095 (La.App. 2d Cir.5/8/96), 674 So.2d 1018, writ denied, 96-1459 (La.11/15/96), 682 So.2d 760, writ denied, 98-0282 (La.6/26/98), 719 So.2d 1048.
LSA-R.S. 14:33 defines a battery as the intentional use of force or violence upon the person of another. LSA-R.S. 14:34.1 provides:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, 38,223, 38,423 (La.App. 2d Cir.6/23/04), 877 So.2d 216, writ denied, XXXX-XXXX (La.11/24/04), 888 So.2d 229; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992). The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, cert. denied, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670, rehearing denied, 516 U.S. 1142, 116 S.Ct. 977, 133 L.Ed.2d 897 (1996); State v. Updite, supra.
The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Robinson, 37,043 (La.App. 2d Cir.5/14/03), 848 So.2d 642. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. LSA-R.S. 14:21; State v. Updite, supra; State v. Robinson, supra.
After reviewing the record in its entirety, we find no error in the trial court's conclusion that the evidence was sufficient to support a conviction of the second degree battery of Kelly.[4] As noted above, in *327 the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. Several witnesses testified that the defendant struck Kelly with the helmet. That testimony was not controverted by any other witness. Additionally, no witness testified that Kelly provoked the attack in any way. The testimony indicated that Kelly had already helped the defendant's wife up before the battery took place. Therefore, the evidence presented does not support the defendant's contention that he believed his wife was in danger.
Viewing the evidence in the light most favorable to the prosecution, we find that the evidence was sufficient to show that the defendant intentionally, rather than accidentally, struck Kelly with the helmet. Furthermore, considering the seriousness of her physical injuries, we reject any argument by the defendant that the injuries did not constitute "serious bodily injury" for purposes of the second degree battery statute.
The record also supports the conclusion that the defendant failed to prove his claim of self-defense by a preponderance of the evidence. See State v. Freeman, 427 So.2d 1161 (La.1983); State v. Updite, supra. The defendant's argument that he acted in self-defense was not corroborated by anyone, including his family members who were present during the altercation. It is clear from the testimony that the defendant armed himself with a motorcycle helmet as he approached Kelly from behind. There was no evidence that Kelly was acting aggressively towards the defendant or his wife. Kelly was not armed, and the defendant failed to produce any evidence that she made any overt act or otherwise put him in reasonable fear of immediate loss of life or great bodily injury. The record overwhelmingly supports the state's contention that neither the defendant nor his wife was attacked by Kelly before he struck her over the head with the helmet. This assignment is therefore without merit.
Continuance/Recess
The defendant also contends the trial court erred in refusing to allow additional time for him to produce Kenneth Johnson to testify as an adverse witness.[5] The defendant argues that Johnson "was perhaps the most critical witness" since it was his motorcycle that was "bumped" and that Johnson was the aggressor because he began "banging" on the defendant's car window. The defendant urges that Johnson appeared in court at the beginning of the trial and later "obviously was avoiding testifying." However, Johnson did not appear despite repeated subpoenas, and he could not be located after a writ of attachment was issued.[6]
*328 We first note that the record does not show that the defendant made either a written or oral motion for a continuance or recess. Instead, the defendant's counsel indicated that he was reluctant to proceed without Johnson's testimony, stating, "I am reluctant to go forth without Mr. Johnson, although it is my understanding that the Court will not grant additional delay to try to get him here." Defense counsel did not object to the trial court's refusal to issue an instanter subpoena. Rather, counsel proceeded to proffer evidence with regard to Johnson's criminal history, stating, "[H]ad he been here and we had been allowed to place him on the witness stand, we would have offered those convictions for the purposes of impeachment. . . ." Defense counsel stated that if Johnson were present, he would have been a hostile witness for whom the convictions would have been offered for purposes of impeachment.
Even if defense counsel's statements on the record could be construed as an oral motion for a continuance or recess, we find that the trial court did not abuse its discretion, and there is no showing the defendant was prejudiced by Johnson's unavailability.
LSA-C.Cr.P. art. 708 makes a distinction between a "continuance" and a "recess," as follows:
A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced. A recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has commenced.
In this case, as the trial had already commenced, the defendant was required to request a recess. It is well settled that whether the motion was improperly styled as one of continuance or recess, the court may examine the motion as though it had been properly denominated. State v. White, 389 So.2d 1300 (La.1980); State v. Bertrand, 381 So.2d 489 (La.1980); State v. Dickinson, 370 So.2d 557 (La.1979); State v. Mizell, 341 So.2d 385 (La.1976). Thus, although the motion may have been improperly styled as one for "continuance," it can be reviewed as if it had been properly named as one for recess. State v. Spears, 39,302 (La.App. 2d Cir.9/27/06), 940 So.2d 135, writ denied, 2006-2704 (La.8/31/07), 962 So.2d 424; State v. Dooley, 38,763 (La.App. 2d Cir.9/22/04), 882 So.2d 731, writ denied, 2004-2645 (La.2/18/05), 896 So.2d 30.
A motion for continuance, if timely filed, may be granted in the discretion of the court in any case if there is good ground therefor. LSA-C.Cr.P. art. 712.[7] The provisions of LSA-C.Cr.P art. 709 concerning a continuance based on the absence of a witness state:
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality *329 of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
The standard of review of a motion for recess is the same as the review of a motion for a continuance. State v. White, supra; State v. Spears, supra; State v. Dooley, supra. The granting or denial of a motion for continuance or a motion for recess is within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal absent a showing of abuse and specific prejudice. LSA-C.Cr.P. art. 712; State v. Martin, 93-0285 (La.10/17/94), 645 So.2d 190; State v. Spears, supra; State v. Dooley, supra.
In State v. Dooley, supra, the defendant argued that the trial court erred in refusing to grant her a "continuance" (actually a recess) because of the unavailability of the wife of one of the state's witnesses. However, the defendant did not provide specific allegations with regard to how the trial court abused its discretion or how she was prejudiced. On appeal, she argued that the witness was needed to show the sordid lifestyle of the victim and that he was an illegal drug user and dealer. During her argument on a motion for new trial, the defendant stated that the witness would have shown that it was possible that someone else shot and killed the deceased. This court rejected the defendant's arguments, finding that at no point did the defendant provide any specifics with regard to how the missing witness would have proven her allegations, or how the testimony would have resulted in a different outcome of the trial.
As in Dooley, supra, the defendant herein has not provided this court with any specific assertions with regard to how Johnson's testimony would have proven the defendant's allegations, or how the testimony would have resulted in a different outcome at trial. Although Johnson's testimony might have shed some light on the details of how Kelly was hit, it is only the defendant's speculation that Johnson's testimony might have helped prove the defendant's allegations of self-defense. Moreover, there was no denial of the defendant's right to confrontation because the state never called Johnson to testify. This assignment lacks merit.

CONCLUSION
For the reasons set forth herein, we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] Russell and Kelly Ford are husband and wife but are not related to the defendant.
[2] The charges with regard to Russell Ford, Bridgette Grimes and Carl Grimes arose from events which occurred while the defendant was driving his vehicle. The lone conviction in this matter was for the second degree battery of Kelly Ford, which resulted from events occurring after the defendant had exited his vehicle.
[3] Carl testified that he underwent 13 surgeries, as well as skin grafts, as a result of the incident.
[4] We note that the defendant argued in brief that the trial court specifically found that the defendant was justified in his actions with his car and that the attack against him never stopped, but intensified until after Kelly was hit. However, contrary to the defendant's contentions, the court did not determine that the defendant's actions in running over the other victims were justified. The court merely determined that there was insufficient evidence to convict him, beyond a reasonable doubt, of the other charges. Thus, there was no internal contradiction between not finding the defendant guilty of intentionally running over the other victims and finding him guilty of the second degree battery of Kelly.
[5] The defendant argues that nothing in the record explains why the state did not call Johnson and that a "good guess" is that Johnson, "with his record of violence, would have damaged the state's attempt to portray the victims as boy and girl scouts on a [sic] evening nature drive, that were attacked, without provocation, by Melvin Ford." However, the defendant does acknowledge that the bench trial consisted of morning and afternoon sessions that spanned over the course of several months.
[6] On February 21, 2007, the trial court issued a writ of attachment for Johnson at the defendant's request when Johnson failed to appear on that date despite having been subpoenaed. The trial court declined to issue an instanter subpoena that day because the case was not taken up until 2:00 p.m. and the court did not believe Johnson could be found soon enough that day. The case was continued until February 28, 2007, at which time the court noted that Johnson had not been arrested on the writ of attachment.
[7] LSA-C.Cr.P. art. 707 provides that a motion for a continuance shall be in writing and shall allege specifically the grounds upon which it is based and, when made by a defendant, must be verified by his affidavit or that of his counsel. However, this court has held that, under extenuating circumstances, an oral motion is sufficient. State v. Spears, supra; State v. Owens, 30,903 (La.App. 2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.