793 So.2d 485 (2001)
STATE of Louisiana, Appellee,
v.
Jermaine ANDY, Appellant.
No. 34,833-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
Rehearing Denied September 20, 2001.
*486 James Johnson, Minden, J. Mike Lawrence, Counsel for Appellant.
Richard Ieyoub, General Attorney, James M. Bullers, District Attorney, Charles Jacobs J., Schuyler Marvin, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, BROWN and KOSTELKA, JJ.
*487 BROWN, J.
Defendant, Jermaine Andy, (also known by the nickname "Nig"), was indicted for the second degree murder of Mario Rabb. A jury convicted defendant of the responsive verdict of manslaughter. Defendant obtained new counsel after his conviction and filed motions for new trial and post-verdict judgment of acquittal. Both of these motions were denied. Thereafter, the trial court sentenced defendant to 15 years at hard labor. Following the court's denial of his motion for reconsideration, defendant filed the instant appeal. For the reasons set forth below, we affirm.

Brief Factual Synopsis
Mario Rabb attended a party at the Bayou Acres Apartments in Minden, Louisiana, on New Year's Eve 1997. In the parking lot of the apartment complex, an argument between Carlos Sanders and defendant escalated into a fistfight between Sanders and Monte Montgomery. The fight progressed into a general melee' in which people were either involved in the fight or were attempting to keep others from fighting. Defendant went to his car, got a .22 caliber revolver and fired one to three shots. Mario Rabb, who was in the crowd but not involved in the fight, was shot above his left eye and died upon arrival at the Minden Medical Center.

Discussion

Denial of Post-Verdict Judgment of Acquittal
In his motion for post-verdict judgment of acquittal, defendant claims that the evidence was not sufficient to support his conviction of manslaughter.
When reviewing the sufficiency of the evidence, appellate courts are controlled by the standard enunciated by the U.S. Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78; State v. Captville, 448 So.2d 676 (La.1984). The reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt. Id. This standard was codified by the Louisiana Legislature in La.C.Cr.P. art. 821, which applies to all post-verdict motions for acquittal based upon insufficiency of the evidence. Article 821, in pertinent part, provides:
(A) The defendant may move for a post-verdict judgment of acquittal following the verdict ...
(B) A post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty.
Defendant was charged with second degree murder. La.R.S. 14:30.1(A)(1) defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Manslaughter is a responsive verdict to second degree murder. La. C.Cr.P. art. 814. La.R.S. 14:31(A) provides that manslaughter is:
(1) A homicide which would be murder under wither Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection....
(2) A homicide committed, without any intent to cause death or great bodily harm.
(a) When the offender is engaged in the perpetration or attempted perpetration of any felony not enumerated in Article 30 or 30.1, or of any intentional *488 misdemeanor directly affecting the person; ...
Defendant specifically argues that State's Exhibit # 1, a .22 caliber revolver, was not shown to have been the weapon defendant possessed on the night of the shooting, nor was it shown to have fired the bullet that killed the victim.

Linking the gun to defendant
The gun started out in the possession of Monte Montgomery. Defendant and Montgomery both testified that Montgomery had defendant keep the gun at his house. Defendant admitted that before the shooting, Montgomery told him where the gun was and that defendant brought that gun to the party in a holster in his car. Defendant further admitted that, during the fight, he got the gun out of the car, but left the holster in the vehicle. Defendant testified that he fired one shot from the pistol, which was then taken from him by Montgomery. Some days later, Montgomery surrendered the weapon to police by showing Officer Danny Weaver the gun's hiding place, which was under a house. The gun recovered by police fit the holster found in defendant's vehicle after the shooting.
Numerous witnesses testified that defendant fired at least one shot from a gun that resembled the revolver recovered by Officer Weaver. Alonda Antuane ("Twone") Solomon, Mario Rabb's half-brother (they have the same father), testified that defendant fired two shots from a dark-colored .22 caliber revolver very similar to the one entered as State's Exhibit # 1. Solomon testified that his brother dropped after the first shot fired by defendant. According to Solomon, defendant fired as he was raising the gun into the air. Defendant told someone, "ya'll get off of him." Solomon believed that defendant was intoxicated. Diequiri Rabb, the decedent's half-brother (they have the same mother), stated that he saw defendant fire a gun twice. He further testified that defendant "aimed into the crowd" when he fired the gun the first time and that the second shot was fired into the air. Antuane Prince, Rabb's cousin, testified that defendant fired one shot into the crowd and two shots into the air. Timothy Loud (Loyd) testified that he saw defendant fire one shot "straight" and the other two "in the air." Loud (Loyd) stated that the gun marked as State's Exhibit # 1 was similar to the gun he saw defendant with the night of the shooting.
Antonio Robinson, a friend of both the defendant and the victim, testified that he heard one gunshot and related that "Nig had his gun, but it was pointing up in the air when I was looking at it." While he was unable to identify State's Exhibit # 1 as the weapon he saw the night of the shooting, he said "it looked like a revolver." Mitra Graham testified that she saw defendant with a gun, then ran inside. Ms. Graham stated that she heard but did not see any shots fired.
Monte Montgomery testified that he and Carlos Sanders got into a fight. While he had Sanders down on the ground, he heard three shots; he then looked up and saw defendant with a gun. Montgomery took the gun from defendant, then chased Sanders into Annie Allen's residence and fired a shot into Ms. Allen's floor. This bullet was never recovered. Montgomery then fled and hid the weapon. Three and one-half weeks later, Montgomery surrendered the gun to police and at trial identified State's Exhibit # 1 as that weapon. Detective Weaver confirmed that State's Exhibit # 1 was the gun turned over to him by Montgomery.
Officer George Salsberry, Jr., testified that on the night of the shooting, he received a call about an incident at Bayou Acres Apartments. As he was on his way *489 to the scene, he observed a car leaving the apartment complex at a high rate of speed. He stopped the vehicle. Defendant was in the car stopped by Officer Salsberry. Officer Salsberry testified that he found a black holster on the floorboard, which he turned over to Detective Weaver. Officer Weaver demonstrated that the gun fit the holster found in defendant's car.
The jury could have reasonably believed that the gun introduced as State's Exhibit # 1 was the weapon fired by defendant on New Year's Eve.

Linking the bullet fragment to the gun
The bullet recovered from the victim was badly damaged and could not be matched to any particular weapon. However, it was identified by the state's firearm identification expert as more consistent with being fired from a .22 caliber gun and was inconsistent with having been fired from the only other weapon found at the scene, a .380 automatic. The coroner, Dr. Steven T. Hayne, also identified the fragment taken from Rabb's skull as consistent with a .22 caliber projectile.
David Yates, qualified as an expert in ballistics (which is the science of motion of projectiles in flight) and firearms identification, testified that the fragment removed from Rabb's head was consistent with a .22 caliber and that there was "no possibility whatsoever" that the fragment could have come from a .380 caliber bullet. Yates stated that the fragment could not be identified with any particular firearm. Yates pointed out that bullets, particularly those with small cartridges such as a .22, tend to fragment when they strike bone and that in general, .22 caliber bullets are harder than most other calibers to identify and compare.
LaShutta Patrece Lott testified that she saw defendant holding a gun pointed into the air; when she heard a shot, she took off running. Ms. Lott stated that she heard a total of three shots. Defendant, while denying that he had fired into the crowd, admitted that he had the gun and had fired one shot that evening.
Although the firearms examiner, David Yates, was unable to say that the fragmented bullet removed from the victim's skull (State's Exhibit # 6) was fired from the weapon (State's Exhibit # 1), as noted above, the evidence strongly supported a reasonable belief that it was. This assignment of error is without merit.

Denial of Motion for New Trial
Based on La.C.Cr.P. art. 851(1), (3) and (5), defendant filed a motion for new trial in which he asserted that the verdict was contrary to the law and evidence and that he has obtained new evidence. On appeal, defendant urges error in the trial court's denial of his new trial motion.
Denial of a motion for new trial based on La.C.Cr.P. art. 851(1) or (5) is not subject to review on appeal. State v. Bartley, 329 So.2d 431 (La.1976); State v. Davenport, 33,961 (La.App.2d Cir.11/01/00), 771 So.2d 837; State v. Harper, 27,278 (La.App.2d Cir.08/23/95), 660 So.2d 537, writ denied, 95-2318 (La.01/12/96), 666 So.2d 320; State v. Combs, 600 So.2d 751 (La.App. 2d Cir. 1992), writ denied, 604 So.2d 973 (La. 1992).
In a motion for new trial based upon newly discovered evidence, La. C.Cr.P. art. 815(3), the defendant has the burden of showing four elements: (1) the evidence was discovered after trial; (2) the failure to discover the evidence at the time of trial was not caused by lack of diligence; (3) the evidence is material to the issues at trial; and (4) the evidence is of such a nature that it would probably have produced a different verdict. State v. Hammons, 597 So.2d 990 (La.1992); State v. *490 Lanham, 31,791 (La.App.2d Cir.03/31/99), 731 So.2d 936, writ denied, 99-1320 (La.01/14/00), 753 So.2d 207.
As noted above, an argument between Carlos Sanders and defendant on New Year's Eve 1997 led to a fistfight between Sanders and Monte Montgomery. During the fight a shot (or shots) were fired by defendant. After defendant fired at least one shot, Montgomery got the gun and chased Sanders into the apartment of Mrs. Allen. In that residence, another shot was fired, either accidently or deliberately, into the floor. Montgomery then fled the scene and some days later surrendered the weapon to police. Prior to defendant's trial, Montgomery pled guilty to obstruction of justice for hiding the weapon used to kill Mario Rabb. After Rabb's shooting, his first cousin, Antuane Prince, removed a.380 automatic from his car with the stated intention of killing defendant. Prince, however, abandoned the gun on the side of the apartment building where it was found by police.[1]
Defendant submitted several statements allegedly given post-trial by witnesses pursuant to a stipulation by the state that the witnesses, if called, would testify as shown in their statements. These statements were made by Carlos Sanders, who testified for the defense at trial, and Johnny Ray Peters, who did not testify at trial. The statements are summarized as follows.

Carlos Sanders
The primary distinction between Sanders' trial testimony and his post-trial statement is his revelation in the statement that, after the first shot was fired by defendant, someone hit him under his right eye with a revolver. Approximately 20 seconds later, two more shots were fired. Consistent in both statements is Sanders' recollection that Rabb landed on Sanders' right foot after Rabb was shot and that he did not see who fired the other two shots.

Johnny Peters
Johnny Peters is defendant's half-brother; the two share the same mother. In his statement, Peters indicated that he saw defendant fire one shot into the air. Peters then ran and after about 45 seconds, he heard two more shots. Peters stated that he did not see Mario Rabb fall when his brother fired the first shot.
While defendant's motion for new trial was based on alleged "new evidence," notably absent are any allegations that this evidence was newly discovered, that there was the exercise of due diligence, that this evidence was not discovered before or during trial, or that the evidence would probably have changed the verdict or judgment of guilty as required by the jurisprudence. See State v. Hammons, supra. We find no error in the trial court's denial of defendant's motion for new trial.
Peters' statement adds very little to the information already presented (other than to slightly expand the time delay between the shots from 20 to 45 seconds). Even Peters stated that defendant fired at least one of the shots. Sanders testified at trial and his post-trial statement is hard to reconcile with his testimony. At trial, Sanders did not testify that there was another gun, other than the one first fired by defendant then later by Montgomery. This evidence clearly does not qualify as "newly discovered." Due diligence, i.e. a pre-trial interview or more in depth direct exam of Sanders would have resulted in the information's presentation to the jury.
This assignment of error is without merit.

*491 Admission of Weapon into Evidence

We find no merit to defendant's contention that the trial court erred in admitting into evidence State's Exhibit # 1 and State's Exhibit # 6. These two items of evidence were separately connected to the shooting of Rabb. As noted above, the gun was identified as the weapon possessed and fired by defendant the night of the shooting and the fragment was identified as the object which caused the death of Rabb. The connection that defendant's gun fired the bullet that killed the victim is supplied by the testimony of several witnesses. The timing and direction of the shots and the relationship between the shots fired and Rabb's injury are evidence from which the jury could have reasonably inferred the connection.
This assignment of error is without merit.

Excessive Sentence
According to defendant, the trial court erred in giving too much weight to the senseless nature of the shooting "which may have actually been caused by the criminal negligence of Jermaine Andy or caused by another person." Further, defendant urges that the trial court placed too much weight on aggravating factors and not enough weight on mitigating factors.
In sentencing defendant, the trial court considered many factors. The court noted that the victim, Mario Rabb, had been a remarkable person. Rabb, who was deaf, had attended the Louisiana School for the Deaf in Baton Rouge. He was a talented athlete and was attending college when he was killed. The court, while noting the doctrine of transferred intent, opined that defendant never intended to shoot Mario Rabb. The court also pointed out that many letters had been written by community members on defendant's behalf.
The court further noted that defendant, aged 26, was the father of two children and had no history of violence prior to the New Year's Eve 1997 incident. The Department of Public Safety and Corrections recommended a 20-year sentence; this term is one-half of the maximum sentence for manslaughter. The court then acknowledged the seriousness of an offense that results in the death of another and noted that defendant knowingly created a risk of death or great bodily injury to more than one person.
We find a more than adequate factual basis for the 15-year hard labor sentence imposed by the trial court and cannot say that this sentence shocks the conscience, notwithstanding defendant's claim that the killing may have been only "negligent homicide."[2] To the contrary, viewing the evidence in accordance with the standard enunciated by the Supreme Court in Jackson v. Virginia, supra, standard, the jury could have convicted defendant under any of the following theories:
(1) Defendant specifically intended to kill or inflict great bodily harm on someone in the crowd and killed Rabb (transferred intent).
(2) Defendant, while not intending to kill Rabb, committed a non-enumerated felony (aggravated batteryLa.R.S. 14:34; illegal use of weapons or dangerous instrumentalitiesLa.R.S. 14:94) and a death ensued.
(3) Defendant, while not intending to kill Rabb, committed an intentional misdemeanor *492 directly affecting the person (aggravated assaultLa.R.S. 14:37).
This assignment is without merit.

Conclusion
For the reasons set forth above, defendant's conviction and sentence are AFFIRMED.

APPLICATION FOR REHEARING
Before NORRIS, C.J., BROWN, STEWART, CARAWAY, and KOSTELKA, JJ.
Rehearing denied.
NOTES
[1] This weapon was introduced at trial as State's Exhibit # 2.
[2] This is the first time that defense counsel has argued that the killing may have been only negligent homicide. Those parts of the record that were transcribed do not contain any references to this theory or claim.