981 So.2d 139 (2008)
STATE of Louisiana, Appellee,
v.
Tyrone W. JOHNSON, Appellant.
No. 43,066-KA.
Court of Appeal of Louisiana, Second Circuit.
April 9, 2008.
*141 Peggy J. Sullivan, Monroe, for Appellant.
Tyrone W. Johnson, Pro Se.
Jerry L. Jones, District Attorney, Holly A. Chambers-Jones, Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
WILLIAMS, J.
The defendant, Tyrone Johnson, was charged by grand jury indictment with second degree murder, a violation of LSA-R.S. 14:30.1. After a jury trial, the defendant was found guilty as charged. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals. For the following reasons, we affirm the conviction and sentence.

FACTS
On June 1, 2006, the defendant shot and killed his wife, Lori Johnson, in front of Barbara Booker's house on Polk Street in Monroe, Louisiana. Booker told police that she ran into her house when the defendant appeared and fired a gun at Lori. Booker heard more shots fired as she ran through the house and out of the back door. After the police arrived, Booker returned to her home and saw the victim's body lying face down in the doorway with blood around the head. Bobby Harris, Booker's boyfriend, told police that he was returning home from work when he saw defendant shoot the victim, who was sitting in a chair. Defendant shot the victim again as she ran to the front doorway, where she fell face down. Defendant then stood over the victim and shot her in the head. The victim was pronounced dead at the hospital.
Subsequently, the defendant was arrested and charged with second degree murder. Before trial, counsel for the defense filed a motion to appoint a sanity commission alleging that defendant could not assist in his defense because he could not recall anything concerning the crime. The minutes of court show that after a hearing the trial court denied the motion for a sanity commission, finding that defendant was competent to proceed to trial. On the day of trial, the defendant requested new counsel, complaining that his attorneys had not adequately communicated with him. The court denied the motion for new counsel, but the court stated that defendant would be given more time with his attorneys if they so requested after he told them of his concerns. As previously stated, the jury found defendant guilty as charged and the trial court sentenced him to serve life imprisonment at hard labor without benefits. This appeal followed.

DISCUSSION
The defendant contends the evidence was insufficient to support the conviction *142 of second degree murder. Defendant argues that a verdict of manslaughter should have been entered based on evidence that he was upset by the restraining order against him and shot the victim in the heat of passion.
LSA-R.S. 14:30.1 defines second degree murder as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. Specific intent is that state of mind that exists when the circumstances indicate the offender actively desired the proscribed criminal consequences to follow his act. LSA-R.S. 14:10(1); State v. McCray, 621 So.2d 94 (La.App. 2d Cir.1993). Specific intent is a state of mind and need not be proved as a fact. It may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Graham, 420 So.2d 1126 (La.1982). The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Huizar, 414 So.2d 741 (La.1982); State v. Dean, 528 So.2d 679 (La.App. 2d Cir.1988).
In reviewing the correctness of such a determination, the court should consider the evidence in the light most favorable to the prosecution and must determine whether the evidence is sufficient to convince a reasonable trier of fact of the guilt of the defendant beyond a reasonable doubt as to every element of the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2081, 61 L.Ed.2d 560 (1979); State v. Huizar, supra.
In contrast, the definition of manslaughter includes a homicide which would be murder under Section 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that an offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed. LSA-R.S. 14:31(A)(1).
In the present case, the parties agreed to introduce into evidence the coroner's autopsy report relating to the cause of death of the victim and several autopsy photos. The parties also stipulated that Dr. Peretti, the forensic pathologist who performed the autopsy, was an expert in his field and that the bullets removed from the victim's body during the autopsy were admissible "without foundation or authentication."
Sergeant Keith Hancock of the Monroe Police Department testified that he responded to the crime scene and took photographs. Hancock stated that the photographs depicted the front doorway of the residence where the shooting took place, and a pool of blood inside the doorway where the victim was found. Other photos showed a bullet jacket, a bullet fragment and an intact .38 caliber bullet, all found at the crime scene. Hancock also testified that he took photos of the victim's body at the emergency room showing bullet entrance and exit wounds, including a photo of the back of the victim's head showing a single bullet entry wound in the victim's skull.
Barbara Booker testified that the victim, Lori Johnson, was her friend and that she knew the defendant. Booker stated that while she and the victim were sitting outside of the house, the defendant came around the corner of the residence with a gun in his hand, pointed the gun in the victim's face and said, "B____, what did I tell you? What you gonna do?" Booker testified that she saw defendant shoot the victim and then Booker ran into the house, grabbed her telephone and called 9-1-1 as *143 she ran out of the back door. Booker stated that she hid in a neighbor's yard until police officers arrived and that when she returned to her house, she saw the victim lying in the front doorway in a pool of blood. Booker identified the defendant in court as the person who shot the victim.
Bobby Harris testified that he was returning home to the residence that he shared with Booker when he saw defendant walking along the side of the house carrying a revolver. According to Harris, the defendant then came around the corner of the house and started shooting at the victim. Harris stated that Booker ran into the house and the victim attempted to follow, but fell inside the front door. Harris testified that the defendant then approached the victim, stuck his hand inside the door and fired two more times, killing the victim. Harris identified the defendant as the victim's killer in court.
In his appellate brief, the defendant alleges that the eyewitness testimony was inconsistent because Booker did not mention seeing Harris nearby when the shooting occurred. However, despite any minor inconsistencies in their testimony, both eyewitnesses unequivocally identified defendant as the shooter and this fact was not seriously disputed by the defense. Furthermore, specific intent is plainly shown by the circumstances of the crime, especially the defendant's act of shooting the victim in the head at very close range after she had collapsed on the floor. The discharge of a firearm at close range and aimed at a person is indicative of a specific intent to kill or inflict great bodily harm upon that person. State v. Seals, 95-0305 (La.11/25/96), 684 So.2d 368.
Contrary to defendant's argument that the jury should have returned a verdict of manslaughter under the facts of this case, the evidence in the record is more than sufficient to support the defendant's conviction for second degree murder. Defendant's receipt of a restraining order could not reasonably be considered the kind of event that would qualify either as provocation sufficient to deprive an average person of his self-control and cool reflection, or as an event that would cause the defendant to commit murder in sudden passion. Instead, the state presented ample evidence with which to convince a reasonable trier of fact of the defendant's guilt beyond a reasonable doubt as to every element of the offense of second degree murder. The assignment of error lacks merit.
Motion for New Counsel
The defendant contends the trial court erred in denying his motion for new counsel. Defendant argues that because of his trial counsel's failure to communicate with him, the choices he made throughout the course of the trial, including the decision not to testify, resulted from the lack of trust between attorney and client.
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. King, 06-1903 (La.10/16/07), 969 So.2d 1228; State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
To establish that his attorney was ineffective, the defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required *144 by prevailing professional standards demanded for attorneys in criminal cases. Strickland, supra. The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Tilmon, 38,003 (La.App.2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866; State v. Moore, 575 So.2d 928 (La.App. 2d Cir. 1991).
Second, the defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La. App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9. A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, XXXX-XXXX (La.5/30/03), 845 So.2d 1067.
As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief ("PCR") in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentiary hearing under LSA-C.Cr.P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Willars, 27,394 (La.App.2d Cir.9/27/95), 661 So.2d 673. Here, the record on appeal is sufficient to address defendant's ineffective assistance of counsel claim.
In the present case, the defendant sought new counsel based on his attorneys' alleged failure to communicate with him. Defendant told the court that his counsel had only spoken with him before his prior court appearances. One of defendant's lawyers, Jay Nolen, explained to the court that he had spoken to defendant on two occasions and that both times the conversations were short because the defendant had said he could not remember what had happened.
Despite the defendant's expressed desire for more personal contact with his attorneys, defendant has failed to identify "certain acts or omissions by counsel" that would have affected the outcome of the proceedings. The record demonstrates that defendant's attorneys filed a number of pretrial motions, including a motion to appoint a sanity commission, a motion for continuance and a motion for a psychological examination, which was granted by the court. As previously noted, the trial court told defendant to inform his attorneys about his concerns and that the court would provide him with more time with his attorneys if requested. The record shows that defense counsel never asked for more time, and defendant has not asserted that his attorneys refused to ask for more time *145 after he expressed his concerns. Furthermore, the defendant's attorneys were required to respond to the overwhelming evidence of defendant's guilt produced by the state.
Regarding the defendant's decision not to testify, we note that after the state rested, the court discussed with defendant his right not to testify and gave him time to discuss with his lawyers whether he wanted to testify in his own defense. After discussing the matter with counsel, defendant stated to the court, "I wish to-because we didn't have enough time for certain matters in certain situations, I would not like to stand on the stand." The court asked defendant to repeat himself and he responded, "Due to the fact that we haven't had much time to discuss matters and the situation and my trial, I prefer not to stand on the stand."
Although defendant complains that he did not testify because he did not have enough time to discuss his situation with counsel, the defendant admitted that each time his attorneys tried to discuss his case he told them that he could not recall what had happened. This court gives great deference to trial counsel's judgment, tactical decisions and trial strategy, strongly presuming they exercised reasonable professional judgment in advising defendant not to testify. Such advice was reasonable in this case, where the defendant claimed he could not remember what had happened at the time of the shooting and where, by testifying, defendant would have been subjected to cross-examination by the state.
Additionally, defendant's statement to the trial court that "we haven't had much time to discuss matters and the situation and my trial" falls under the category of general statements and conclusory charges that will not suffice to show ineffective assistance. Defendant has made no showing as to particular matters which could have been discussed that would have influenced his decision about whether to testify, or that would have changed the outcome of the trial. Based upon this record, the defendant has failed to demonstrate any errors by his counsel that were so serious as to deprive him of a fair trial. The assignment of error lacks merit.
We have examined the record for error patent and found none.

CONCLUSION
For the foregoing reasons, the defendant's conviction and sentence are affirmed.
AFFIRMED.