997 So.2d 694 (2008)
STATE of Louisiana, Appellee
v.
Rodrique A. BRADLEY, Appellant.
No. 43,593-KA.
Court of Appeal of Louisiana, Second Circuit.
October 29, 2008.
Rehearing Denied November 25, 2008.
*695 Ross E. Shacklette, Bossier City, for Appellant.
*696 Paul J. Carmouche, District Attorney, Ron C. Stamps, John Ford McWilliams, Jr. Assistant District Attorneys, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
GASKINS, J.
Following a jury trial, the defendant, Rodrique A. Bradley, was convicted as charged of aggravated second degree battery, a violation of La. R.S. 14:34.7. The jury also found that the defendant used or discharged a weapon during the course of the offense. The court sentenced the defendant under La. C. Cr. P. art. 893.3 to serve 15 years at hard labor. The defendant appealed. We affirm the defendant's conviction and sentence.

FACTS
On January 1, 2006, 15-year-old J.W. and her teenage aunt, A.W., were walking through the Cedar Grove neighborhood in Shreveport.[1] The girls were walking to what they described as a "candy house," a home where the owner sells candy to people in the neighborhood.
According to A.W., their route took them past the home of the 23-year-old defendant. A.W. said that the defendant tried to speak with J.W. as they walked by, but J.W. ignored the defendant, and the two girls continued walking to the candy house.
The two girls met up with J.W.'s 15-year-old boyfriend, T.T. While walking back to A.W.'s house, their route took them back past the defendant's home. According to the three teenagers, the defendant again spoke to J.W. as they walked by. T.T. told the defendant not to speak to J.W., and the three continued walking to A.W.'s house.
A few minutes later, when they were a few streets past the defendant's home, the teenagers saw the defendant approaching them. According to the three juveniles, the defendant was carrying a baseball bat. T.T. testified:
And then [the defendant] walked up and he said something, and then [J.W.] got in front of me, and [the defendant] flinched like he was going to hit her and I told her to move before she got hit. And he swung the bat and I snatched it. Then we started fighting.
The girls gave similar accounts of the beginning of the fight. J.W. testified that when she got between the defendant and her boyfriend, she told them not to fight; the defendant then responded that it had nothing to do with her, but was between him and T.T.
T.T. was able to take the bat away from the defendant, and the three juveniles said that T.T. did not attempt to use the bat during the fight. T.T. and the defendant fought with their fists, and T.T. was winning the fight, making the defendant stumble. The defendant then began to back away. The juveniles testified that the defendant then reached into his waistband and pulled out a handgun. T.T. tried to run away, but the defendant shot at T.T.; one of the bullets struck T.T. in the groin.[2] The defendant fled from the scene.
The Shreveport Police Department (SPD) responded to the shooting. Police learned the defendant's name but were *697 unable to locate him. Police recovered two.40 caliber shell casings from the scene.
The defendant turned himself in to the police on January 2, 2006. All three of the juveniles identified the defendant in a photo lineup. The state charged the defendant with aggravated second degree battery with the use of a gun.
At his trial, the defendant chose to testify. He said that T.T. approached him and was "talking real aggressive" and started the argument. The defendant said that T.T. started the fight by taking the baseball bat away from the him and hitting him first on the arm and then on the back, knocking him to his knees. The defendant explained that he then pulled out his gun and fired it to stop T.T. from continuing to hit him with the bat.
The jury convicted the defendant, as charged, with aggravated second degree battery. According to its verdict form, the jury also found that the defendant actually used or discharged a weapon during the commission of the offense.
The defendant filed a motion for a post-verdict judgment of acquittal, urging that the evidence was insufficient to convict him. He also filed a motion for new trial, citing (1) the testimony of a police officer that the defendant had an outstanding warrant for domestic abuse battery, (2) questions by the prosecutor during his cross-examination of the defendant about his assertion of his Fifth Amendment rights after his arrest, and (3) a newly discovered witness.
The court held a hearing on the motions on September 17, 2007; the defendant was represented by new counsel. The motions were denied. The court sentenced the defendant to serve 15 years at hard labor, to run concurrently with any other sentence. The defendant's motion to reconsider was denied.
The defendant now appeals, urging six assignments of error.

MOTION FOR NEW TRIAL
The defendant argues that the trial court erred in denying his motion for new trial, in which he alleged that he had discovered another witness to the events whose identity was not known at the time of the trial.

Law
La. C. Cr. P. art. 851 provides, in part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . .
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty. . . .
The defendant has the burden of establishing these factors. State v. Andy, 34,833 (La.App. 2d Cir.8/22/01), 793 So.2d 485, writ denied, 2001-2734 (La.8/30/02), 823 So.2d 940. La. C. Cr. P. art. 854 provides:
A motion for a new trial based on ground (3) of Article 851 shall contain allegations of fact, sworn to by the defendant or his counsel, showing:
(1) That notwithstanding the exercise of reasonable diligence by the defendant, the new evidence was not discovered before or during the trial;

*698 (2) The names of the witnesses who will testify and a concise statement of the newly discovered evidence;
(3) The facts which the witnesses or evidence will establish; and
(4) That the witnesses or evidence are not beyond the process of the court, or are otherwise available.
The newly discovered whereabouts or residence of a witness do not constitute newly discovered evidence.

Discussion
At the hearing on the motion for new trial, defense counsel discussed the newly-discovered witness:
[T]he witness informed me personally that she saw the incident herein and that what she observed was two individuals, one on the ground being beaten by the other one and two other people watching the incident take place. Now, she was unable to tell me whether that was my client who was on the ground or my client that was doing the beating, but in either case that was not in accordance with the testimony presented at trial which was allegedly that my client hit the individual one time and then the individual got the stick away from my client and threw it away.
The motion for new trial was supported by an affidavit from the defendant's post-trial counsel stating that he had been informed by the defendant's trial counsel that he did not know of the existence of the witness.
The juvenile witnesses all explained that, once the fistfight began, T.T. prevailed over the defendant. T.T. said that the defendant fell or stumbled backwards as T.T. hit him while both J.W. and A.W. said that the defendant never fell to the ground. The newly discovered witness said that she saw the two fighting on the ground, but the witness was not able to identify which participant was on top of the other. Evidence that the fight took place partly on the ground contradicted the testimony of two of the three juvenile witnesses and was relevant to that extent. However, the witness apparently did not see either of the combatants with a weapon, nor did she see how the fight began or ended. Thus, her testimony would not have shed light upon which party was the aggressor and would have added little if anything to the evidence regarding whether the amount of force used by either party was reasonable. Consequently, we find that this witness' testimony was not such that it would "probably have changed the verdict or judgment of guilty. . . ." Therefore, the trial court did not err in denying the defendant's motion for new trial.
This assignment of error is without merit.

MOTION FOR MISTRIAL
The defendant next complains that the trial court should have granted a mistrial when the jury heard an SPD officer testify that the defendant was wanted on a warrant for domestic battery.
At trial, the police officer testified about the circumstances surrounding the defendant's arrest for the instant offense:
The witnesses, [A.W.] and [J.W.], had already been released from the scene. I was unable to contact them that day.
The next day on the 2nd, I was called by [an SPD detective] and advised that Mr. Bradley was wishing to turn himself in. Mr. Bradley had a warrant for his arrest for domestic abuse battery.
The defendant objected to this testimony, and the trial court sustained the objection. However, the officer continued his testimony by saying: "Okay. He was booked under another charge. . . ."
*699 The defendant did not ask for a mistrial at the time the testimony was given, but after the witness was released, the defendant moved for a mistrial. The trial court found that the comment was unsolicited and offered to admonish the jury to disregard the remark, but the defendant cited strategic reasons for refusing the admonishment.

Law
The law in this area is well settled. As this court stated in State v. Smith, 43,136 (La.App. 2d Cir.4/23/08), 981 So.2d 200:
La. C.E. art. 404(B) provides that evidence of other crimes, acts or wrongs is generally not admissible. La. C. Cr. P. art. 770(2) provides that a mistrial shall be granted upon motion of the defendant when a remark or comment is made within the hearing of the jury by the judge, district attorney, or a court official during trial or in argument and that remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. State v. Ellis, 42,520 (La.App. 2d Cir.09/26/07), 966 So.2d 139. For purposes of article 770, a law enforcement officer is not considered a "court official," and an unsolicited, unresponsive reference to other crimes evidence made by a law enforcement officer is not grounds for a mandatory mistrial under La. C. Cr. P. art. 770. State v. Ellis, supra; State v. Scott, 34,949 (La. App. 2d Cir.01/25/02), 823 So.2d 960, writ denied, 02-1622 (La.05/16/03), 843 So.2d 1122.
La. C. Cr. P. art. 771 sets forth permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require automatic mistrial under article 770. La. C. Cr. P. art. 775 also sets forth additional permissive grounds for mistrial. Under these articles, mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Ellis, supra. Moreover, mistrial is a drastic remedy which is only authorized where substantial prejudice will otherwise result to the accused. State v. Kemp, 39,358 (La. App. 2d Cir.03/11/05), 896 So.2d 349, writ denied, 05-0937 (La.12/09/05), 916 So.2d 1052. A trial court's ruling denying mistrial will not be disturbed absent an abuse of discretion. State v. Givens, 99-3518 (La.01/17/01), 776 So.2d 443, appeal after remand, 04-0765 (La.App. 4th Cir.10/27/04), 888 So.2d 329, writ denied, 04-2919 (La.03/18/05), 896 So.2d 1003, cert. denied, 546 U.S. 867, 126 S.Ct. 154, 163 L.Ed.2d 154 (2005); State v. Taylor, 30,310 (La.App. 2d Cir.02/25/98), 709 So.2d 883.
Even if a mistrial was warranted under article 770, 771, or 775, the failure to grant a mistrial would not result in an automatic reversal of defendant's conviction, but would be a trial error subject to the harmless error analysis on appeal. State v. Givens, supra; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. Trial error is harmless where the verdict rendered is "surely unattributable to the error." State v. Johnson, supra.

Discussion
As noted, the court sustained the defendant's objection to the officer's remark that the defendant had an outstanding warrant for domestic abuse battery. The officer's statement was not provoked by or responsive to a question from the prosecutor; instead, the officer was relating the circumstances of the defendant's arrest. The officer's reference was unwarranted and unnecessary but hardly so prejudicial *700 to the defendant to warrant a mistrial. There was no pattern of questioning by the prosecutor designed to elicit inadmissible other crimes evidence, and the trial moved on with the presentation of relevant evidence. Accordingly, the trial court's denial of the motion for mistrial based on the officer's remark was not an abuse of its discretion.
This assignment of error is without merit.

DEFENDANT'S POST-MIRANDA SILENCE
This assignment of error is directed at the trial court's overruling of the defendant's objection to the prosecutor's questions regarding the defendant's post-Miranda silence. After the defendant testified that he acted in self-defense, the prosecutor asked the defendant about his failure to assert self-defense to the police. In its brief, the state argues that the defendant waived his Fifth Amendment rights by choosing to testify, that there was no evidence that the prosecutor knew his questions would elicit a reference to counsel's advice to the defendant, and that the advice of counsel was just the defendant's "excuse" for not informing the police of his self-defense claim.
During cross-examination by the prosecutor, the defendant confirmed that he turned himself in to police the day after the shooting. The following exchange then occurred:
Q: Did you have an opportunity to talk to [an SPD detective]?
A: No, sir.
Q: Did you ever tell him at anytime over a year ago that it was self-defense?
A: No, sir, I never did 
Q: Wait, wait. Wouldn't that help you; wouldn't it make sense to tell him that at that time?
A: Well, actually, I was advised by a lawyer not to make a statement.
Q: After your lawyer told you that, did anybody ever tell you, hey, man, if it was self-defense, maybe you should just go ahead on 
[Defense counsel]: Your Honor, I would object to this line of questioning.
[Prosecutor]: On what basis?
[Defense counsel]: He is stating that he was exercising his legal rights, and 
[Prosecutor]: And I believe, Your Honor, I believe once he takes the stand, he waives it.
The Court: Approach the bench.
[Whereupon a side-bar discussion off the record was held.]
[Prosecutor]: Your Honor, it is the State's 
The Court: I will overrule the objection.
[Prosecutor]: Thank you, Your Honor.
The Court: All right.
Q. [Prosecutor]: But you never told anybody it was self-defense, about the self-defense story, did you?
A: (No response.)
Q: That's a yes or no question.
A: No, sir.
The defendant objected, as noted in the quotation, but did not request an admonition or a mistrial.
In closing argument, the prosecutor said:
So what reason would [the juveniles] have to get up and concoct this story that all just happens to come together, it's the same story they all told the police officer. He never mentions this whole story of self-defense. Never mentioned it. Never mentioned it.
*701 No evidence was presented regarding when, or if, the defendant was given his Miranda rights. No jury charge was given about the impermissibility of drawing an inference from the defendant's post-Miranda silence.

Law
In 1976, the United States Supreme Court in Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), mandated that it was reversible error for a defendant testifying at his trial to be impeached with his post-Miranda silence. The highest court reasoned:
The warnings mandated by [Miranda]. . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to a retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. [Citations omitted]
The rule imposed by Doyle was not applied to pre-arrest statements. Jenkins v. Anderson, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).
Louisiana, in applying Doyle, recognized some caveats. When the prosecutor referenced post-Miranda silence in State v. Kersey, 406 So.2d 555 (La.1981), the Louisiana Supreme Court reasoned that the prosecutor made a reference to the defendant's post-Miranda silence to show that the jury had all the statements made by the defendant. That conviction was upheld. In State v. Bell, 446 So.2d 1191 (La.1984), the trial court found the prosecutor's reference to the defendant's post-Miranda silence was permissible to rebut the defendant's assertion that the state failed to properly investigate. The failure to contemporaneously object to a Doyle violation in State v. Arvie, 505 So.2d 44 (La.1987), resulted in the conviction being upheld.[3]
In 1993, the United States Supreme Court reasoned that a harmless error review applied to Doyle violations on direct appeal in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).[4] The court pointed out that a Doyle error fits in the category of constitutional violations which are characterized as "trial error," and concluded that it was amenable to a harmless error standard. The court also recognized that the Constitution does not prohibit the use, for impeachment purposes, of a defendant's silence prior to arrest or after arrest if no Miranda warnings are given. Post-Brecht, this court applied the harmless error rule to a Doyle violation in State v. Lee, 38,114 (La.App. 2d Cir.3/3/04), 868 So.2d 256, writ denied, XXXX-XXXX (La.10/8/04), 883 So.2d 1027, where we *702 found no reversible error in light of the overwhelming evidence of guilt.
La.C.Cr.P. art. 771-which sets forth the permissive grounds for requesting an admonition or a mistrial when a prejudicial remark is made on grounds that do not require an automatic mistrial under La. C. Cr. P. art. 770  is the applicable provision concerning the proper remedy where references are made to a defendant's post-arrest silence. State v. Kersey, supra; State v. Jones, 40,652 (La.App. 2d Cir.1/25/06), 920 So.2d 941, writ denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1278. However, if the trial court does not respond in any positive way to the defendant's valid objection, an additional motion for a mistrial would be superfluous in order to preserve the issue for appellate review. See, e.g., State v. Mack, 37,174 (La.App. 2d Cir.6/27/03), 850 So.2d 1035, writ denied, 2003-2122 (La.1/16/04), 864 So.2d 628: "[A]s held by the supreme court in State v. Baylis, 388 So.2d 713 (La.1980), when a defendant's objection to improper remarks is overruled, he is not required to make a useless motion for admonition or a mistrial to preserve his rights on appeal"; State v. Grant, 531 So.2d 1121 (La.App. 4th Cir.1988), writ denied, 567 So.2d 1117 (La.1990): "When a defendant objects to improper remarks and the objection is overruled, the defendant is not required to move for an admonition or a mistrial to preserve his rights on appeal."

Discussion
The record is silent as to whether the defendant was given his Miranda rights. We will, however, examine this issue under the assumption that the defendant was given his Miranda rights after his arrest and that he was silent when questioned by the police.
In the instant case, the defendant made a timely objection to the prosecutor's question about the defendant's silence, but the trial court erroneously overruled that objection. As a result, the defendant was forced to admit to the jury that he never offered the police an exculpatory statement. Since the trial court overruled the defendant's objection and did not offer an admonition to the jury that no inference could be drawn from the defendant's choice not to speak to police after being given his Miranda rights, the defendant here, unlike the one in Kersey, did not get "all the relief to which he was entitled." In view of the trial court's failure to respond positively to the defendant's valid objection, a motion for mistrial would have been superfluous. As a result, we find that the defendant's timely objection was sufficient to preserve this error for appellate review  even though the defendant did not make a motion for mistrial  because the trial court overruled the defendant's objection.
Although the prosecutor's questions were permissible as to the defendant's pre-Miranda silence, the questions as to his post-Miranda silence were not. They were plainly intended to impeach the defendant with his silence; the prosecutor sought to undermine the veracity of the defendant's theory of self-defense by eliciting evidence that the defendant had not previously put forth that theory. As such, these questions were the sort of questions prohibited by Doyle and Sam.
However, as discussed supra, a Doyle violation is a trial error. A trial error does not provide grounds for reversal of a defendant's conviction and sentence unless it affects substantial rights of the accused. La.C.Cr.P. art. 921; State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94. The test is whether there is a reasonable possibility the error might have contributed to the conviction and whether the court can declare a belief that the error is *703 harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), rehearing denied, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967); State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291, cert. denied, 547 U.S. 1115, 126 S.Ct. 1940, 164 L.Ed.2d 669 (2006). The reviewing court must find the verdict actually rendered by this jury was surely unattributable to the error. Johnson, supra; Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993).
The testimony of the state's three juvenile witnesses was consistent that the defendant, armed with a bat and a gun, pursued them several streets away from the site of the initial incident in which the defendant and T.T. exchanged words over the defendant talking to J.W. When J.W. tried to prevent a fight by standing between the two young men, the defendant told her the incident had nothing to do with her. All parties  including the defendant himself  agree that when the verbal argument began the defendant was armed with a bat, which T.T. subsequently took away from him. All parties also agree that a fight ensued in which T.T. got the upper hand. The three juvenile witnesses testified that the defendant initiated the confrontation, i.e., "brought on the difficulty" under La. R.S. 14:21, and that T.T. hit the defendant with his fists, not the bat; only the defendant testified that T.T. struck him with the bat. However, all of the witnesses agreed that the shots were fired by the defendant during the fight. The three juvenile witnesses testified that the defendant shot T.T. as the defendant was trying to run away. The defendant insisted that, despite his coincidental possession of a gun and a bat, he was not the aggressor. The defendant testified that the shooting was, in his words, merely a "reaction" and that if someone comes up and "just started, the first thing you're going to do is try to get away, but during the getting away, you try to defend yourself." [Emphasis added.] (This actually tends to corroborate the juvenile witnesses' testimony about the defendant running and shooting back at T.T.) Thus, the defendant's own statements show that he did not withdraw "from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict," as required of an aggressor by La. R.S. 14:21.[5] It was only after this portion of his testimony that the prosecutor questioned him about his pre-Miranda and post-Miranda silence.
The state's references to the defendant's post-Miranda silence were brief and intermingled with the permissible references to his pre-Miranda silence. When answering the prosecutor's question as to why he *704 made no statement after his arrest claiming self-defense, the defendant responded straightforwardly that his lawyer had advised against any statement, a completely plausible and understandable assertion.
The trial court erred in overruling the defendant's objection to the prosecutor's use of the defendant's post-Miranda silence; however, it was a trial error subject to the harmless error analysis. We find that in the instant case the jury's verdict was "surely unattributable to the error" given the evidence as a whole, the testimony demonstrating that the defendant was the aggressor who brought on the difficulty, and the defendant's own admissions about his failure to withdraw from the conflict. Accordingly, the defendant is not entitled to a reversal of his conviction on this basis.

COMPLIANCE WITH LA. C. CR. P. ART. 893.3(D)
The defendant urges that the trial court erred in accepting the jury's finding that the defendant had used or discharged a weapon because the verdict did not comply with the requirements of La. C. Cr. P. art. 893.3(D). It provides:
D. If the court finds by clear and convincing evidence that a firearm was actually used or discharged by the defendant during the commission of the felony for which he was convicted, and thereby caused bodily injury, the court shall impose a term of imprisonment of fifteen years; however, if the maximum sentence for the underlying felony is less than fifteen years, the court shall impose the maximum sentence.
As noted, the jury's verdict form provided:
1. We, the jury, find the defendant, Rodrique A. Bradley, guilty as charged of AGGRAVATED SECOND DEGREE BATTERY;
(a) Do you (the Jury) find that a weapon was actually used or discharged by the defendant during the commission of the offense. YES X NO ____
The defendant did not object to the jury charge or to this form prior to submission of the case to the jury.
The offense of aggravated second degree battery carries a sentence of imprisonment at hard labor for up to 15 years. La. R.S. 14:34.7(B). The defendant's sentence, although apparently enhanced under La. C. Cr. P. art. 893.3, is within this range, so there is no violation in this case of the rule of Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-2363, 147 L.Ed.2d 435 (2000), because Apprendi only applies when the enhanced sentence is more severe than the maximum sentence for the original offense.
Although La. C. Cr. P. art. 893.3(D) requires a finding that the offender used a firearm, not merely a "weapon," and a finding that the use or discharge of the firearm "caused bodily injury," the verdict form presented to the jury did not require the jury to make either of those findings. Nevertheless, the defendant's counsel had the opportunity to consider both the charge to the jury and the verdict form before the case was submitted to the jury and specifically denied any objection to either the charge or the verdict form. In fact, the defendant admitted to shooting the victim, although the defendant claimed that the shooting was done in self-defense. In the absence of any objection, and because the sentence imposed is within the unenhanced statutory range for the crime and the victim of this offense was seriously and permanently injured during the offense, we find that this assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL
In two assignments of error, the defendant argues that his trial attorney was *705 ineffective by failing to object to the alleged misstatements of the law propounded by the prosecutor. Specifically, he refers to the prosecutor's statements that, in claiming self-defense, one cannot use greater force than is directed against the one claiming self-defense and that an aggressor can never claim self-defense.
During closing arguments, the prosecutor gave his interpretations of the law to the jury, including these statements:
Judge Mosely is going to instruct you on the law, and he is going to tell you something regarding the law. The law is this: That a person who is an aggressor or who brings on a difficulty cannot claim the right of self-defense. That is the law unless he withdraws from the conflict with good faith and such in a manner that he lets the person know.
. . . .
The law is clear. If you are the aggressor, you bring it on-guess what?-you can't claim self-defense.
. . . .
The other thing is this: The judge will tell you, assuming for the sake of argument that there may be some scintilla of veracity as it comes to this whole self-defense, the use of force and violence is justifiable when committed for the purpose of preventing a forcible offense against a person or forcible offense or trespass against property of a person in lawful possession, provided that the force or violence that is used is reasonable and necessary. Let's assume, again, we buy his self-defense argument, that simply means this: If you're going from here with our fists, you can't use a gun. You can only use the force that is being used against you.
. . . .
. . . I say one thing to you before you deliberate, an aggressor cannot claim self-defense. An aggressor cannot claim self-defense. Everybody says he left wherever he was, where the initial altercation occurred and found the young man and the young lady. . . . That sounds like an aggressor to me. An aggressor cannot claim self-defense in the law. The law. And it's as simple as that.
The trial court instructed the jury about the law, including the appropriate passages concerning the use of force in self-defense, specifically La. R.S. 14:19(A)[6] and La. R.S. 14:21[7].

Law
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish that counsel was ineffective, a defendant first must show that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed the defendant by the *706 Sixth Amendment. The relevant inquiry is whether counsel's representation fell below the standard of reasonableness and competency as required by prevailing professional standards demanded for attorneys in criminal cases. State v. Moore, 575 So.2d 928 (La.App. 2d Cir.1991). The assessment of an attorney's performance requires his conduct to be evaluated from counsel's perspective at the time of the occurrence. A reviewing court must give great deference to trial counsel's judgment, tactical decisions, and trial strategy, strongly presuming he has exercised reasonable professional judgment. State v. Moore, supra; State v. Johnson, 43,066 (La.App. 2d Cir.4/9/08), 981 So.2d 139.
Secondly, a defendant must show that counsel's deficient performance prejudiced his defense. This element requires a showing the errors were so serious as to deprive the defendant of a fair trial, i.e., a trial whose result is reliable. Strickland v. Washington, supra. The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings. Rather, he must show that, but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. See Strickland v. Washington, supra; State v. Pratt, 26,862 (La.App. 2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
Claims of ineffective assistance of counsel are more properly raised in an application for post-conviction relief in the trial court because it provides the opportunity for a full evidentiary hearing under La. C. Cr. P. art. 930. State v. Lane, 40,816 (La.App. 2d Cir.4/12/06), 927 So.2d 659, writs denied, XXXX-XXXX (La.12/15/06), 944 So.2d 1283, and 2006-2502 (La.5/4/07), 956 So.2d 599. When the record is sufficient, however, allegations may be resolved on direct appeal in the interest of judicial economy. State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Lane, supra.

Discussion
In this case, the defendant's claims can be resolved on the appellate record. The prosecutor repeated several times the statement that an aggressor cannot claim self-defense, and he also gave a narrow opinion about the law regarding the appropriate use of force in self-defense. However, the trial court correctly and fully instructed the jury on both of these points, and the prosecutor's statements were simply made in furtherance of the state's view of the evidence; to wit, that the defendant attacked the victim and shot the victim only after the defendant began to lose the fight that he started.
The prosecutor's arguments were within the permissible scope of argument under La. C. Cr. P. art. 774; see also State v. Gage, 42,279 (La.App. 2d Cir.8/29/07), 965 So.2d 592, writ denied, XXXX-XXXX (La.2/22/08), 976 So.2d 1283. Furthermore, we find the prosecutor made no misstatement of the law in his closing argument.
These assignments of error are without merit.

CONCLUSION
The defendant's conviction and sentence are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] The precise location of these events is not well described in the testimony.
[2] The wound caused the loss of the teen's testicles, an injury which will stunt his growth, prevent him from being a father and likely require him to have testosterone replacement therapy for the remainder of his life.
[3] In a case where there was no reason for the questions but to impeach the defendant with his post-Miranda statement, the court applied the Doyle rule and reversed the conviction. State v. Sam, 412 So.2d 1082 (La.1982).
[4] The Brecht decision concluded that a different standard of review is appropriate for federal habeas corpus review.
[5] The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. The state must then prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Ford, 42,928 (La.App. 2d Cir.2/13/08), 976 So.2d 321. The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. Kirkland, 42,397 (La.App. 2d Cir.8/15/07), 962 So.2d 1173, writ denied, XXXX-XXXX (La.2/15/08), 976 So.2d 174; State v. Ford, supra. A person who is the aggressor or who brings on the difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Ford, supra.

Even had the defendant shown that he withdrew from the conflict and done so in such a manner that the victim knew or should have known of the withdrawal, the defendant would still have to prove that the shooting was reasonable and apparently necessary.
[6] A. The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. . . .
[7] A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.